IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**,<br><br>v.<br><br>NELSON PEREIRA [3],<br>CARLOS CAMACHO-SANTIAGO [14],<br><br>**Defendants**. | **Criminal No**. 12-413 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

On March 15, 2013, twenty-two defendants were charged in a four-count superseding indictment. (Docket No. 518.) Among them, Nelson Pereira and Carlos Camacho-Santiago were each charged with conspiracy to possess cocaine with the intent to distribute it and with aiding and abetting others to possess with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 841 and 846 and 18 U.S.C. § 2.  Id.  A jury trial commenced against seven of the indicted defendants — including Pereira and Camacho — on March 3, 2014. (Docket No. 1278.)  On April 7, 2014, at the close of the government's evidence, both defendants moved for a judgment of acquittal as to all counts pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29").  (Docket No. 1422.)  After hearing arguments from both sides, the Court denied defendants' Rule 29 motions.  Id.  On April 14, 2014, the jury found Pereira and Camacho guilty of counts one and two.  (Docket Nos. 1445 & 1448.)

Each defendant filed a timely,[1] renewed Rule 29 motion arguing that the evidence presented at trial was insufficient to allow a reasonable jury to find him guilty of the charged offenses beyond a reasonable doubt, and seeking a new trial pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33").  (Docket Nos. 1452 & 1459.)  The government opposed the motions on June 9, 2014.  (Docket No. 1497.)  For the reasons that follow, the Court **DENIES** defendants' motions.

I.   **Motion for Judgment of Acquittal**

   A.   **Rule 29 Standard**

        A court may enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.  Fed. R. Crim. P. 29(c).  In reviewing a Rule 29 motion for judgment of acquittal, a district court must consider the evidence, both direct and circumstantial, "in the light most favorable to the prosecution" to determine whether the "body of proof, as a whole, has sufficient bite to ground a reasoned conclusion that the government proved each of the elements of the charged crime beyond a reasonable doubt."  United States v. Lara, 181 F.3d 183, 200 (1st

---

[1] A defendant may move the Court for judgment of acquittal or a new trial based on grounds other than newly discovered evidence within fourteen days after a guilty verdict or after the discharge of the jury, whichever is later.  Fed. R. Crim. P. 29(c)(1), 33. In this case, the guilty verdict and jury discharge occurred on April 14, 2014.  (Docket No. 1442.)  Because both defendants moved for a judgment of acquittal within fourteen days of the verdict, their motions are timely.

Criminal No. 12-413 (FAB)                                                    3

Cir. 1999) (citations omitted).  This standard requires the Court to eschew all credibility judgments and draw all reasonable inferences in favor of the government's case.  <u>United States v. Savarese</u>, 686 F.3d 1, 8 (1st Cir. 2012); <u>United States v. Sepulveda</u>, 15 F.3d 1161, 1173 (1st Cir. 1993).  Thus, the jury's verdict stands unless the evidence could not have persuaded a rational trier of fact of the defendant's guilt beyond a reasonable doubt.  <u>United States v. Soler</u>, 275 F.3d 146, 150 (1st Cir. 2002) (citing <u>Lara</u>, 181 F.3d at 200).

    **B.  Pereira's Conviction for Both Counts; Camacho's Conviction for Count Two**

Each defendant's motion contains less than one page of legal argument.  Pereira's motion makes no reference to the facts of the case, while Camacho's motion makes only broad and passing reference to the evidence presented at trial.  Because Pereira's motion contains no developed arguments regarding either count, the Court **DENIES** his Rule 29 motion for the reasons articulated in the government's opposition (Docket No. 1497), and for the same reasons it denied Pereira's earlier oral Rule 29 motion.  For these same reasons, the Court also **DENIES** Camacho's Rule 29 motion as to count two.

    **C.  Camacho's Conviction for Count One**

Camacho's motion references one possible — albeit poorly developed — argument relevant to his conviction for count one.

Criminal No. 12-413 (FAB)                                                    4

Camacho contends that the evidence established the existence of multiple independent drug trafficking conspiracies among multiple independent suppliers, but did not show any interdependence between the suppliers.  (Docket No. 1459.)  Because the evidence did not establish an ongoing overarching conspiracy, Camacho argues, the Court should enter a judgment of acquittal on duplicity grounds.  Id. (citing Kotteakos v. United States, 328 U.S. 750 (1946) and United States v. Portela, 167 F.3d 687, 695 (1st Cir. 1999)).  Camacho claims that "the evidence established that many other unlinked suppliers, [sic] used the drug transportation line for their individual jobs and that said jobs did not advance or benefit in any way the non-participating suppliers who although shared a general similar common goal, acted independently."  (Docket No. 1459 at p. 2.)

    **1.   Sufficiency of the Evidence for Conspiracy**

To prove a drug conspiracy, "the government must show 'the existence of a conspiracy, the defendant's knowledge of the conspiracy, and the defendant's voluntary participation in the conspiracy.'"  United States v. Bristol-Martir, 570 F.3d 29, 39 (1st Cir. 2009) (quoting United States v. Hernandez, 218 F.3d 58, 64-65 (1st Cir. 2000)).  A showing of tacit agreement may suffice to show the existence of a conspiracy.  United States v. Dellosantos, 649 F.3d 109, 115 (1st Cir. 2011).

In this case, the superseding indictment alleged an agreement among twenty-two defendants, and other known and unknown co-conspirators, to possess multiple kilograms of cocaine with the intent to distribute them to the United States using American Airlines commercial flights.  The jury heard sufficient evidence at trial to find Camacho guilty of participating in the drug-trafficking conspiracy knowingly and voluntarily.  Wilfredo Rodriguez-Rosado (a/k/a "Mogoyo") was the "boss" or hub of the drug trafficking organization ("DTO").  (Docket No. 1404 at p. 42.) Three of the government's cooperating witnesses at trial identified Camacho as a member of the DTO who acted as an intermediary for suppliers transporting drugs to the East Coast of the United States via Rodriguez-Rosado's smuggling operation.  (Docket No. 1497 at pp. 6-7.)

Cooperating witness Gerardo Torres testified that after the DTO experienced a decrease in drug shipments, Camacho brought co-defendant Carlos Arce-Lopez into the DTO as its new drug supplier.  (Docket No. 1374 at pp. 70-72.)  Torres explained that Rodriguez-Rosado asked Camacho for help obtaining a new supplier because "they knew each other for many years back" and Camacho "was up to date about everything."  Id. at p. 79.  According to Torres, as a result of that connection, Arce began sending around 80 kilograms of cocaine per week.  Id. at p. 91.  Torres also "received kilos from [Camacho] that [Camacho] brought to be

transported from Puerto Rico to the United States." Id. at p. 71. On at least three occasions, Torres traveled with Camacho to Newark to pick up suitcases of cocaine in order to test Arce's route, and to deliver money back to Puerto Rico. Id. at pp. 57, 62-65, 84-85.

Cooperating witness Javier Olmo-Rivera also testified that he received kilograms of cocaine from Camacho. (Docket Nos. 1374 at p. 85; 1409 at p. 23.) Additionally, cooperating witness Arnaldo Sierra testified about an incident during which Camacho pointed a pistol at Sierra's head while DTO members questioned Sierra about some missing kilograms of cocaine. (Docket No. 1292 at pp. 127-33, 143-45.)

Assessing these witnesses' testimony in the context of the entire trial, a reasonable jury could have concluded (1) that a conspiracy existed, (2) that Camacho knew of the conspiracy, and (3) that Camacho voluntarily participated in — and attempted to further the goals of — the conspiracy. See United States v. Bristol-Martir, 570 F.3d at 39.

### 2.  Single Conspiracy or Multiple Conspiracies

In determining whether the evidence supports a finding of a single conspiracy, courts look at the totality of the evidence, Dellosantos, 649 F.3d at 117, with an eye toward three factors:  "(1) a common goal, (2) interdependence among the participants, and (3) overlap among the participants." Portela, 167 F.3d at 695. "The goal of selling cocaine for profit satisfies

Criminal No. 12-413 (FAB)                                                         7

the common goal requirement." Portela, 167 F.3d at 695 (internal quotation marks and citation omitted). Participants share a common goal with other participants where the evidence shows each defendant's interest in promoting the cocaine distribution. Id. To determine whether there is "interdependence" among the participants, courts look to "whether the activities or one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme." Id. (internal quotation marks and citation omitted). "[E]vidence of an individual participant's understanding of the interdependence of the co-conspirators' activities is evidence — often the best evidence — of tacit agreement between the individual and his co-conspirators." Id. "Overlap" exists where there is pervasive involvement of a single hub character or "core conspirator." Id. Each defendant need not participate in every transaction necessary to fulfilling the goal of the conspiracy in order for a single conspiracy to exist. United States v. Drougas, 748 F.2d 8, 17 (1st Cir. 1984).

　　　　　The government, pointing to several factors, contends that the jury was presented with sufficient evidence to find beyond a reasonable doubt (1) that there was a conspiracy to distribute cocaine via American Airlines commercial flights from Puerto Rico to the East Coast of the United States; (2) that each defendant knew of the conspiracy by virtue of their roles receiving or delivering drugs, packaging or handling cocaine-filled luggage,

Criminal No. 12-413 (FAB)                                                   8
---

collecting or delivering monies obtained from the drug shipments, or attending meetings with other co-conspirators where the drug smuggling operations were planned and discussed; and (3) that each defendant voluntarily participated in the single conspiracy. (Docket No. 1497 at pp. 17-19.)  The Court agrees.

The trial transcript contains the following evidence, which — taken as a whole and viewed in the light most favorable to the jury's verdict — supports the jury's guilty verdict as to a single conspiracy.  In the conspiracy's infancy, Rodriguez-Rosado transported the drugs from Puerto Rico to the East Coast of the United States himself, hiding kilograms of cocaine in carry-on luggage that he would smuggle through the American Airlines cargo area with the help of co-conspirator Wilfredo Santiago-Rios.  (Docket Nos. 1358 at pp. 115-122; 1404 at pp. 46-47.)  After airports heightened security measures in the wake of September 11, 2001, Rodriguez-Rosado employed another American Airlines employee, Roberto Rodriguez-Cruz, to hire a truck driver to smuggle the cocaine-packed suitcases from the American Airlines cargo area into aircraft bound for the East Coast of the United States.  (Docket Nos. 1285 at pp. 58-63; 1292 at p. 41, 46; 1335 at pp. 18-22; 1358 at p. 125; 1374 at p. 47.)  Rodriguez-Cruz paid the individuals who delivered the suitcases of cocaine to the cargo area, as well as the American Airlines employees who smuggled the suitcases onto planes.  (Docket Nos. 1335 at pp. 66-70; 1358 at

Criminal No. 12-413 (FAB)                                                9

pp. 11-35, 130-140; 1374 at p. 42; 1396 at pp. 6-8; 1398 at pp. 35-38; 1404 at p. 53.)

During the duration of the conspiracy, DTO members played various parts within the operation, often compartmentalizing their participation while receiving payment and/or instruction from the same individuals.  (Docket Nos. 1335 at pp. 66-71; 1365 at pp. 81-85; 1374 at p. 77; 1396 at pp. 6-12; 1409 at pp. 37-41.) Rodriguez-Rosado hired an American Airlines employee at the airport in Newark, New Jersey, Franklin Pratts, who in turn hired other airline co-workers to ensure that the drugs arriving from Puerto Rico were placed on conveyor belts and ultimately delivered to their intended recipients.  (Docket No. 1374 at p. 84.)  Pursuant to Rodriguez-Rosado's instructions, these employees were paid with money generated by the cocaine smuggling operation.  <u>Id.</u>  Pratts and other DTO members — including Pedro San Lucas, Braulio Burgos, Olmo, and Torres — would collect, store, and deliver back to Puerto Rico Rodriguez-Rosado's and other suppliers' drug proceeds through money couriers.  (Docket Nos. 1374 at pp. 92-96, 105; 1403 at pp. 37-38; 1409 at p. 75.)

After American Airlines discontinued its commercial flights to Newark in 2007, the DTO began using new routes through Orlando and Miami for its smuggling operation.  (Docket No. 1335 at pp. 102-103, 109.)  The DTO hired additional American Airlines employees at these destination points to ensure that the drugs were

successfully smuggled to their final destinations.  Id.  Several drug suppliers simultaneously used the American Airlines drug transportation lines between 1999 and 2009, smuggling over 15,000 kilograms of cocaine from Puerto Rico to the East Coast of the United States.  (Docket No. 1409 at p. 51.)

Given the totality of this testimony, a reasonable jury could have found beyond a reasonable doubt that a single conspiracy existed.  First, resolving all credibility judgments in favor of the jury's verdict, DTO participants shared a common goal.  The trial testimony indicates that the DTO and all of its participants shared a common goal of smuggling cocaine from Puerto Rico to cities on the East Coast of the United States on American Airlines commercial flights.  See Portela, 167 F.3d at 695.  Second, the government's witnesses testified to facts indicating that the different DTO members were interdependent — some packaged the cocaine into suitcases, others smuggled the suitcases into the American Airlines cargo area, others smuggled the suitcases from the cargo area to the aircraft, others insured that the suitcases were loaded on the aircraft, others accompanied the drugs to the United States destinations, others identified or received the suitcases at the airports in the United States, and still others collected the drug sale proceeds and returned them to Puerto Rico.  In this way, "one aspect of the scheme was necessary [and] advantageous to the success of another aspect of the scheme."  Id.

(internal quotation marks and citation omitted).  The evidence revealed each participant's understanding of other participants' activities, indicating tacit agreement between the co-conspirators.  See id.  Third, the DTO participants overlapped.  The testimony showed the pervasive involvement of Rodriguez-Rosado — the "core conspirator" of the DTO — in all elements of the conspiracy.  See id.

For these reasons, the jury could have reasonably found the existence of a single conspiracy, and that Camacho participated in the conspiracy.  Accordingly, Camacho's Rule 29 motion as to count one is **DENIED**.

**II.  Motion for New Trial**

Both defendants move for a new trial pursuant to Rule 33.  "Motions for a new trial are directed to the discretion of the trial court."  United States v. Wright, 625 F.2d 1017, 1019 (1st Cir. 1980).  A trial court "may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  A defendant may base his or her motion for a new trial on newly discovered evidence or on other grounds, Fed. R. Crim. P. 33(b), but "[t]he remedy of a new trial must be used sparingly and only where a miscarriage of justice would otherwise result."  United States v. Del-Valle, 566 F.3d 31, 38 (1st Cir. 2009) (internal citation and quotation marks omitted).

Criminal No. 12-413 (FAB)                                               12

    The defendants' arguments leave much to be desired on the Rule 33 front.  Pereira's Rule 33 argument consists of three sentences,[2] while Camacho's consists of one.[3]  (Docket Nos. 1452 & 1459.)  Neither motion so much as mentions the facts of this case, or cites any law binding on this Court.  Id.  Defendants do not point to any newly discovered evidence or other grounds amounting to a miscarriage of justice that would warrant a new trial.  "Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority."  Rodriguez v. Mun. of San Juan, 659 F.3d 168, 175 (1st Cir. 2011).  Thus, absent any evidence or argument that

---

    [2] "Appearing defendant moves this Honorable Court to grant a new trial under Rule 33 of the Federal Rules of Criminal Procedure, taking into consideration the interests of justice; the interests of justice includes: **evidentiary errors during trial [U.S. v. Vicaria, 12 F.3d 195 (11th Cir. 1994)** (failure to give theory of defense instruction warranted a new trial); **insufficient evidence [U.S. v. Washington**, 184 F.3d 653, 658 (7th Cir. 1999); **U.S. v. Kwan**, 2003 WL 229773515 (S.D.N.Y. 2003) (court must examine all of the facts and circumstances to determine if there is manifest injustice requiring a new trial).**  The decision to grant or deny a motion for a new trial based on the weight of the evidence is within the sound discretion of the court.  **U.S. v. Smith**, 487 F.3d 618 (8th Cir. 2007); **the Court has the discretion to disbelieve witnesses and weigh the evidence to determine the sufficiency.  U.S. v. Starr**, 533 F.3d 985, 999 (8th Cir. 2008); **U.S. v. Campos**, 306 F.3d 577, 579 (8th Cir. 2002.** [sic]" (Docket No. 1452 at p. 2) (emphasis in original).

    [3] "That a new trial is further requested taking into consideration the interest of justice, such as evidentiary errors during trial and insufficiency of evidence to convict.  U.S. v. Smith, 487 F.3d 618 (8th Cir. 2007); U.S. v. Vicaria, 12 F.3d 195 (11th Cir. 1994); U.S. v. Washington, 184 F.3d 653, 658 (7th, [sic] Cir. 1999)."  (Docket No. 1459 at p. 2.)

Criminal No. 12-413 (FAB)                                                    13

the interest of justice requires a new trial, the Court **DENIES** defendants' Rule 33 motions.

### III. Conclusion

For the reasons articulated above, the Court **DENIES** both Pereira's and Camacho's motions for judgment of acquittal and for a new trial.  (Docket Nos. 1452 & 1459.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 8, 2014.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE