# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**                        **Criminal No.** 12-413 (FAB)

NELSON PEREIRA [3],
PEDRO SAN LUCAS [20],

    **Defendants.**

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court are defendants Nelson Pereira ("Pereira")'s and Pedro San Lucas ("San Lucas")'s joint motion for change of venue and severance pursuant to Federal Rule of Criminal Procedure 21 ("Rule 21") (Docket No. 2191); Pereira's motion for change of venue pursuant to Rule 21, the Fifth Amendment Due Process Clause of the United States Constitution, and the Sixth Amendment of the United States Constitution (Docket No. 2193); Pereira's supplemental motion to dismiss pursuant to the Fifth Amendment Double Jeopardy Clause of the United States Constitution (Docket No. 2166); Pereira's motion to exclude pursuant to the Sixth Amendment Confrontation Clause of the United States Constitution and Federal Rules of Evidence 401 ("Rule 401"), 402 ("Rule 402"), and 403 ("Rule 403") (Docket No. 2140); Pereira's

motion for additional discovery pursuant to Federal Rule of Criminal Procedure 16 ("Rule 16") (Docket No. 2162); Pereira's motion to disqualify the prosecutor (Docket No. 2195); and San Lucas's motion to dismiss pursuant to the Speedy Trial Act ("STA") and the Sixth Amendment of the United States Constitution. (Docket No. 2173.)  For the reasons set forth below, the Court **DENIES** Pereira and San Lucas's joint motion for change of venue (Docket No. 2191); **DENIES** Pereira's motion for change of venue (Docket No. 2193), his motion to exclude evidence (Docket No. 2140), his motion to dismiss (Docket No. 2166), his motion for additional discovery (Docket No. 2162), and his motion to disqualify the prosecutor (Docket No. 2195); and **DENIES IN PART** San Lucas's motion to dismiss pursuant to the STA and the Sixth Amendment (Docket No. 2173.)

## I.    Background

On May 24, 2012, a federal grand jury returned an indictment charging Pereira and San Lucas with violating 21 U.S.C. section 841 ("section 841") and 21 U.S.C. section 846 ("section 846"). (Docket No. 3 at pp. 3-4.)[1]  The indictment also charges Pereira

---

[1] In addition to Pereira and San Lucas, the grand jury indicted eighteen (18) individuals.  (Docket No. 3.)  All defendants pled guilty or were convicted at trial, with the exception of San Lucas and one other defendant that remains at large.  (Docket Nos. 388, 403, 406, 421, 424, 427, 436, 551, 554, 1296, 1325, 1446-49, 1828, 1841, 2039.)  Pereira was convicted, but the court of appeals vacated his conviction (Docket Nos. 2083, 2084, 2089; U.S. v. Pereira, 848 F.3d 17 (1st Cir. 2017).

with violating 18 U.S.C. section 2 ("section 2").  <u>Id.</u>  On
March 15, 2013, a federal grand jury returned a superseding
indictment charging, among others, Pereira and San Lucas with
conspiring to possess cocaine with intent to distribute in
violation of sections 841 and 846.  (Docket No. 518 at pp. 3-4.)[2]
The superseding indictment also charges Pereira with aiding and
abetting the possession of cocaine with the intent to distribute
in violation of section 841 and section 2.  <u>Id.</u> at pp. 6-7.

Following unsuccessful plea negotiations, Pereira's trial
commenced on March 2014.  (Docket No. 1278.)  The jury found
Pereira guilty of "[c]onspiracy to possess with the intent to
distribute five [] kilograms or more of cocaine" and "[a]iding and
abetting in possession with intent to distribute five [] kilograms
of cocaine," in violation of sections 2, 841, and 846.  (Docket
No. 1445.)  Pereira appealed the verdict to the First Circuit Court
of Appeals.  (Docket No. 1876.)  The court of appeals held that
the prosecutor's improper questions might have affected the
outcome of the trial.  <u>United States v. Pereira</u>, 848 F.3d 17, 33
(1st Cir. 2017).  Accordingly, the First Circuit Court of Appeals
vacated Pereira's conviction on February 3, 2017 and remanded for
a new trial.  <u>Id.</u>

---

[2] The superseding indictment added two defendants to the initial indictment.
(Docket No. 518.)  Both defendants pled guilty.  (Docket Nos. 1485 and 1828.)

San Lucas was arrested in New Jersey on September 7, 2016, more than four years after the indictment was filed, and was brought to Puerto Rico for an initial proceeding. (Docket No. 2057.) Pereira's and San Lucas's cases were consolidated on March 29, 2017. (Docket No. 2104.) The trial date is scheduled to commence on May 14, 2018. (Docket No. 2205.)

## II. Pereira's and San Lucas's Motions for Change of Venue and Severance

On March 5, 2018, San Lucas filed a motion for change of venue and severance. (Docket No. 2191.) Pereira joined San Lucas's motion, see Docket Nos. 2191 and 2197, and filed an independent motion for change of venue on March 6, 2018. (Docket No. 2193.)

In their joint motion, Pereira and San Lucas argue that they "ha[ve] resided all [their] li[ves] in the state of New Jersey" and "ha[ve] had nearly no contact with our [Puerto Rico] jurisdiction before the instant charges were filed." (Docket No. 2191 at pp. 1-2.) They maintain that "the alleged relevant events connected to the charged offense took place outside this jurisdiction" and that "[i]f the instant criminal case is permitted to remain in our jurisdiction, [Pereira and San Lucas] will be denied the opportunity to both investigate the instant charges as well as . . . interview potential witnesses who . . . reside outside our jurisdiction." Id. at p. 2. According to Pereira and

San Lucas, they "will be placed in an unfair position as it will be unduly onerous, costly and burdensome for [their] potential witnesses to travel and stay in Puerto Rico during the pendency of the instant jury trial," and "[t]his factor would make [their] witnesses unavailable, causing extreme irreparable prejudice to the defense." Id. With respect to severance, they state "[t]hat the severance relief herein sought is based on the same meritorious grounds previously discussed in this motion." Id. at p. 4.

In Pereira's additional motion for change of venue, he argues that he "would be deprived of his constitutional rights, including due process, Fifth amendment rights, Sixth amendment rights, and other constitutional rights if he has to defend here in Puerto Rico." (Docket No. 2193 at p. 2.) Pereira asserts that "[a]ll principal allegations and evidence relevant to [] Pereira" and "[a]ll potential witnesses, and evidence for the defense of [] Pereira are located in New Jersey." Id. at p. 2. He claims that he would not be "able to obtain the opportunity for adequate preparation for trial" and therefore would be "deprived of due process and fairness of trial." Id. at p. 4.

## A.    Legal Standard

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to trial by an impartial jury. Skilling v. United States, 561 U.S. 358, 377 (2010). This

right "has also been characterized as 'a basic requirement of due process.'"  In re Tsarnaev, 780 F.3d 14, 18 (1st Cir. 2015) (quoting Skilling, 561 U.S. at 378).  While "[b]y constitutional design, [] trial occurs 'in the State where the . . . crimes . . . have been committed,'" a defendant may move to transfer the proceeding if "extraordinary local prejudice will prevent a fair trial." Skilling, 561 U.S. at 377-78 (quoting U.S. Const. art. III, § 2, cl. 3).  When a defendant moves to transfer venue, "the court must transfer the proceeding against the defendant to another district court if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."  Fed. R. Crim. P. 21(a).  "In those rare, extreme circumstances it may be a 'denial of due process of law to refuse the request for a change of venue.'"  Tsarnaev, 780 F.3d at 18 (quoting Rideau v. Louisiana, 373 U.S. 723, 726 (1963)).

Transfer of venue pursuant to Rule 21(a) is required "where there is an ever-prevalent risk that the level of prejudice permeating the trial setting is so dense that a defendant cannot possibly receive an impartial trial."  United States v. Quiles-Olivo, 684 F.3d 177, 182 (1st Cir. 2012).  This prejudice may be established "where the facts show that jury prejudice should be presumed, and if prejudice should not be presumed, that the jury

was actually prejudiced against the defendant." _Id._ (internal quotation marks and alteration omitted). Rule 21(a)'s requirements "almost exclusively" apply to cases "in which pervasive pretrial publicity has inflamed passions in the host community past the breaking point." United States v. Walker, 665 F.3d 212, 223 (1st Cir. 2011).

"A court also may transfer a criminal case to another district 'for the convenience of the parties, any victim, and the witnesses, and in the interest of justice.'" Walker, 665 F.3d at 223 (quoting Fed. R. Crim. P. 21(b)). "Generally, venue change under Rule 21(b) may be warranted depending on a number of factors, the significance of which inevitability will vary depending on the facts of a given case." Quiles-Olivo, 684 F.3d at 184 (citing Platt v. Min. Mining & Mfg. Co., 376 U.S. 240, 243-44 (1964). Those factors include the location of the parties, potential witnesses, contested events, relevant documents, and counsel, expense to the parties, overall accessibility of the trial location, and any other special factor. Id. at 185 (citing Platt, 376 U.S. at 243-44). The Court may transfer a case if a defendant demonstrates that the change is _both_ convenient _and_ in the interest of justice, "[g]iven that Rule 21(b) lists 'convenience' and 'interest of justice' conjunctively." Id. (citing Fed. R. Crim. P. 21(b); Walker, 665 F.3d at 224.

**B.  Discussion**

Pereira's and San Lucas's Rule 21(a) arguments and Pereira's constitutional claims are unpersuasive.  See Docket Nos. 2191 and 2193.  Both motions fail to identify any "pervasive pretrial publicity" or "risk that the level of prejudice permeating the trial setting is so dense" that Pereira or San Lucas "[could not] possibly have an impartial trial."  See Walker, 665 F.3d at 223; Quiles-Olivo, 684 F.3d at 182.  Because Pereira and San Lucas provide no evidence suggesting actual or presumed jury prejudice, both motions fail to establish the Rule 21(a) requirements.  See Quiles-Olivo, 684 F.3d at 182.  Pereira's independent constitutional claims are similarly unconvincing.  See Docket No. 2193.  Pereira neglects to indicate any existence of "extraordinary local prejudice" that would "prevent a fair trial."  See Skilling, 561 U.S. at 377-78 (quoting U.S. Const. art. III, § 2, cl. 3.)  Pereira's case does not amount to the "rare, extreme circumstance" of local prejudice "so great" as to impede his right to an impartial trial in this jurisdiction.  See Tsarnaev, 780 F.3d at 18; Fed. R. Crim. P. 21(a).

The Rule 21(b) factors do not weigh in favor of Pereira or San Lucas, either.  See Quiles-Olivo, 684 F.3d at 185.  Although Pereira and San Lucas reside in New Jersey, the other codefendants and witnesses reside in Puerto Rico, and the majority of the events

related to the conspiracy occurred in Puerto Rico. (Docket
No. 2201 at p. 2.) The conspiracy involved preparing suitcases
loaded with cocaine in Puerto Rico and shipping the suitcases in
commercial aircrafts from Puerto Rico to the Continental United
States. (Docket No. 518 at pp. 4-6.) Indeed, during Pereira's
first trial, co-conspirator Javier Olmo-Rivera ("Olmo") testified
that Pereira "came to Puerto Rico. . . . where Mogoyo was waiting
for him." (Docket No. 1409 at p. 39.) Olmo testified that Pereira
traveled to Puerto Rico "[i]n order to meet with Mogoyo," id.,
otherwise known as Wilfredo Rodríguez-Rosado ("Rodríguez"), the
maximum leader of the conspiracy. (Docket No. 3 at p. 3.) Olmo
"saw [Pereira]" "[n]ext to [Olmo's] business where Mogoyo had the
roofing business." (Docket No. 1409 at p. 39.) According to Olmo,
Pereira arrived with "a yellow envelope" of "American Airlines
tags" for the luggage containing cocaine to be loaded onto American
Airlines commercial flights and sent to, in Pereira's case, the
Newark, New Jersey airport. (Docket No. 1409 at pp. 39-40.)
Pereira's purported participation in the conspiracy thus involved
regular dealings with Puerto Rico, including visits to the island
and meetings with Rodríguez.

       While many incidents involving Pereira and San Lucas
also occurred in or around New Jersey, the government witnesses
are mostly Puerto Rico residents, working as law enforcement agents

or employees of American Airlines in Puerto Rico. (Docket No. 2201 at p. 2.) The government asserts that "the majority of witnesses who will testify concerning these events are directly tied to Puerto Rico, and they will testify about events that occurred in Puerto Rico as well as New Jersey and elsewhere." <u>Id.</u> The government's physical evidence is located in Puerto Rico, and all legal counsel live in Puerto Rico. <u>Id.</u> This Court is centrally located to all attorneys and investigative agencies. <u>Id.</u> Finally, unlike Pereira and San Lucas, the government carries the burden of proof and must present evidence to prevail. The government "called more than 20 witnesses [in Pereira's original trial], and the majority of these witnesses came from Puerto Rico." <u>Id.</u> The expenses associated with trial would be substantially higher to the government if this case were tried outside of Puerto Rico.

Pereira's and San Lucas's motions fail to establish Rule 21(a) and constitutional prejudice, and the Court does not find that a change of venue would be both convenient and "in the interest of justice" pursuant to Rule 21(b). <u>See</u> <u>Quiles-Olivo</u>, 684 F.3d at 185. Pereira and San Lucas also fail to discuss severance in their joint motion, so that argument is waived. Accordingly, the Court **DENIES** Pereira and San Lucas's joint motion for change of venue and severance (Docket No. 2191); and **DENIES** Pereira's independent motion for change of venue (Docket No. 2193.)

### III. Pereira's Supplemental Motion to Dismiss

On January 25, 2018, Pereira filed a supplemental motion to dismiss the indictment on double jeopardy grounds. (Docket No. 2166.) Pereira argues that "as the result of the prosecutorial plan, the defense presented a case . . . and provided the Government will all the information to prepare for a new trial." Id. at pp. 4-5. Pereira contends that "the Government was aware about their case weaknesses" and "[t]herefore, they had to improperly question the defendant" for strategic advantage. Id. at p. 5. According to Pereira, "Taking into consideration the deliberate nature of Government's improper actions in this case, it is clear that[] another chance to convict Mr. Pereira would be a gift for the Government." Id. He asserts that "double jeopardy should attach[] and prevent further trial of Mr. Pereira." Id. The Court disagrees.

#### A.    Legal Standard

"Like the right to trial by jury, [the guarantee against double jeopardy] is clearly fundamental to the American scheme of justice." Sampson v. United States, 832 F.3d 37, 43 (1st Cir. 2016) (internal quotation marks and citations omitted). The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Id. (quoting U.S. Const. amend. V.)

Society, however, has a "strong interest in providing the government with a full and fair opportunity to prosecute a defendant whose conviction is reversed due to a trial error." United States v. Porter, 807 F.2d 21, 23 (1st Cir. 1986). "Reversal for trial error . . . does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant." Id. (quoting Burks v. United States, 437 U.S. 1, 15 (1984)). Instead, reversal for trial error

> is a determination that a defendant has been convicted
> through a judicial process which is defective in some
> fundamental respect. . . . When this occurs, the accused
> has a strong interest in obtaining a fair readjudication
> of his guilt free from error, just as society maintains
> a valid concern for insuring that the guilty are
> punished.

Id. (quoting Burks, 437 U.S. at 15); see also Tibbs v. Florida, 457 U.S. 31, 40 ("[S]ociety would pay too high a price were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." (internal quotation marks and citation omitted)).

Convictions reversed for trial error "do not pose an unacceptably high risk that the Government, with its superior resources, will wear down the defendant and obtain a conviction solely through its persistence, a primary concern of the double

jeopardy clause." Id. (quoting Tibbs, 457 U.S. at 43) (internal
quotation marks and citation omitted).

**B.  Discussion**

Pereira's arguments are unavailing because his
conviction was reversed for trial error, not for evidentiary
insufficiency.  See Pereira, 848 F.3d at 33; see also Burks, 437
U.S. at 8.  Pereira appealed his conviction "because the
prosecutorial questions . . . improperly compelled Pereira to
comment" on the veracity of two testifying witnesses.  Pereira,
848 F.3d at 21.  Pereira "d[id] not challenge the legal sufficiency
of the evidence supporting his conviction," id. at 19, and the
First Circuit Court of Appeals vacated the conviction because of
prosecutorial error.  Id. at 33 (remanding for new trial because
"the repeated [improper] questions by the government" might have
affected the outcome of the trial).

Because Pereira's initial jeopardy was not terminated by
the vacating of his conviction for trial error, double jeopardy
does not bar Pereira's retrial.  See Porter, 807 F.2d at 23-24;
see also Burks, 437 U.S. at 9 ("It is elementary in our law that
a person can be tried a second time for an offense when his prior
conviction has been set aside by his appeal.") (quoting United
States v. Ball, 163 U.S. 662, 672 (1896) (internal quotation marks
omitted)).  Indeed, a second trial would afford Pereira "a fair

readjudication of his guilt free front error." United States v.
Porter, 807 F.3d at 23.  Accordingly, the Court **DENIES** Pereira's
supplemental motion to dismiss (Docket No. 2166.)

## IV.  Pereira's Motion to Exclude Evidence

On August 17, 2017, Pereira filed a motion to exclude from
the second trial "the paper from Frank Prats [sic] stationary
[that] contains the telephone number of Nelson Pereira." (Docket
No. 2140 at p. 1.)  Alternatively, Pereira requests that the Court
schedule "an evidentiary hearing to determine if said paper should
be excluded to prevent improper presentation of evidence, or
improper speculation by the Jury." Id. at p. 8.  Pereira argues
that the paper "is not relevant" because the document "by itself
does not establish, or has [sic] a tendency to establish a fact of
consequence more or less probable." Id. at pp. 4-5.

Pereira also asserts that admitting the paper as evidence
before a jury would violate his rights pursuant to the
Confrontation Clause. Id. at pp. 5-6.  He contends that the "paper
by itself does not establish relationship to the conspiracy because
there are many other names not related to the conspiracy," and
that "Frank Prats is the best person to explain why the name of
Nelson Pereira appears in his stationary[,] [b]ut Frank Prats is
dead." Id.  Pereira concludes that he "would be deprived of his

constitutional right to cross examine the person that included his name in the stationary." Id.

## A.   Legal Standard

### 1.   Federal Rules of Evidence Standard

"Relevant evidence is admissible unless any of the following provides otherwise:  the United States Constitution; a federal statute; [the Federal Rules of Evidence]; or other rules prescribed by the Supreme Court." Fed. R. Evid. 402. "Irrelevant evidence is not admissible." Id. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The Federal Rules of Evidence, however, "set a very low bar for relevance." United States v. Rodríguez-Soler, 773 F.3d 289, 293 (1st Cir. 2014) (internal citation omitted).

Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. "In balancing the scales of Rule 403, it is important to note that only unfair prejudice is to be avoided, as by design, all evidence is meant to be prejudicial." United States v. Morales-Aldahondo, 524 F.3d 115, 119 (1st Cir. 2008) (internal quotation marks and citation omitted). "Evidence is generally deemed unfairly prejudicial if it has an undue

tendency to prompt a decision by the factfinder on an improper basis." United States v. Benedetti, 433 F.3d 111, 118 (1st Cir. 2005); see also Old Chief v. United States, 519 U.S. 172, 180 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.").

### 2.  Confrontation Clause Standard

The Confrontation Clause gives a criminal defendant "the right . . . to be confronted with the witnesses against him." United States v. Ponzo, 853 F.3d 558, 578 (1st Cir. 2017) (quoting U.S. Const. amend. VI) (internal quotation marks omitted).  The Confrontation Clause "bars admission of testimonial hearsay unless 'the declarant is unavailable' and 'the defendant had a prior opportunity' for cross-examination."  Id. (quoting Crawford v. Washington, 541 U.S. 36, 59 (2004)).  Evidence that is not testimonial is not protected by the Confrontation Clause.  See Davis v. Washington, 547 U.S. 813, 821-22 (2006).  The United States Supreme Court defines "nontestimonial" in the negative by providing examples of testimonial evidence.  See, e.g., Crawford, 541 U.S. at 51-52.  Testimonial statements include, but are not limited to, "ex parte in-court testimony, affidavits, custodial examinations, or similar pretrial statements that declarants would

reasonably expect to be used prosecutorially." Id. (internal
quotation marks and citations omitted).

## B.  Discussion

Pereira's arguments are unpersuasive. The paper meets
the "very low bar for relevance." See Rodríguez-Soler, 773 F.3d
at 293. The paper "from Frank Prats' stationary" was seized from
the home of co-conspirator Rodríguez, and Frank Prats ("Prats") is
a co-defendant in this case. (Docket No. 2140 at p. 1.) The paper
has a "tendency" to make the association between Pereira, Prats,
and Rodríguez "more or less probable than it would be without the
evidence." See Fed. R. Evid. 401. The association between
Pereira, Prats, and Rodríguez, and the extent of this association,
"is of consequence in determining" whether Pereira conspired with
Prats and Rodríguez to possess cocaine with intent to distribute.
See id. Indeed, the Court has already addressed this issue, ruling
that "the piece of paper with defendant Pereira's telephone number
on defendant Prat's stationary . . . meet[s] the low bar of being
relevant." (Docket No. 2153.)

The paper is not "unfairly prejudicial" evidence that
must be excluded despite its relevance. See Benedetti, 433 F.3d
at 118. The paper is merely a piece of Prats's stationary that
includes Pereira's telephone number, among other telephone
numbers. This evidence would not have an "undue tendency to prompt

a decision by the factfinder on an improper basis." <u>See</u> <u>id.</u>
Finally, the Confrontation Clause does not apply to the paper
because the evidence is nontestimonial. <u>See, e.g.</u>, <u>Swift v. Burt</u>,
2016 WL 1583809, at *5 (E.D. Mich. April 20, 2016) ("The entry of
a name and phone number into a personal cell phone is obviously
non-testimonial."); <u>McNabb v. Thomas</u>, 2012 WL 1032540, at *15 n.12
(M.D. Ala. March 27, 2012) ("Officer Gordon's name on the documents
is not "testimonial" under <u>Crawford</u> and its progeny."); <u>Cf.</u> <u>Davis</u>,
547 U.S. at 821-22; <u>Crawford</u>, 541 U.S. at 51–52. Accordingly, the
Court **DENIES** Pereira's motion to exclude the piece of paper on
Frank Prats's stationary containing Pereira's telephone number.
(Docket No. 2140.)

## V. Pereira's Motion for Additional Discovery

On January 23, 2018, Pereira filed a motion for additional
discovery.[3] (Docket No. 2162.) Pereira argues that "[t]he
discovery material provided does not include any relevant
investigation, and/or information to determine who was the
principal person in Newark," and that "there must be information,

---

[3] In this motion, Pereira also moved to dismiss the indictment and appoint an
investigator. (Docket No. 2162.) The Court addressed Pereira's motion to
dismiss and appoint an investigator in January 2018. (Docket Nos. 2164 and
2171; <u>see also</u> Docket No. 2167.) On January 24, 2018, the Court denied Pereira's
motion to dismiss, Docket No. 2164, and on January 31, 2018, the Court ordered
Pereira to "provide the Court with the name of an investigator for the Court to
consider appointing." (Docket No. 2171.) He has not done so, so his request
is waived.

and/or investigation documents" that "[t]he Government had the duty to provide." Id. at pp. 12-13. Pereira contends that he "will not be able to adequately prepare to cross examine [government] witnesses if any investigation, and/or information pertinent to them is not provided before trial." Id. at p. 12.

A.   **Legal Standard**

When a criminal defendant requests additional discovery, "the government must permit the defendant to inspect . . . data, . . . tangible objects, . . . or copies or portions of any of these items, if the item is within the government's possession, custody, or control" and "the item is material to preparing the defense." United States v. Goris, 876 F.3d 40, 44 (1st Cir. 2017) (quoting Fed. R. Crim. P. 16(a)(1)(E)) (internal quotation marks omitted). "A showing of materiality requires 'some indication' that pretrial disclosure of the information sought 'would have enabled the defendant significantly to alter the quantum of proof in his favor.'" Id. at 45 (quoting United States v. Ross, 511 F.2d 757, 763 (5th Cir. 1975)). A district court has broad discretion in deciding motions for additional discovery. Cf. id. ("In order to uphold a district court's denial of a request for additional discovery, we do not demand epistemological certainty that no discoverable information was withheld from the defendant.") (internal citation omitted). If "a defendant's discovery request

is grounded in a speculative theory," for example, "a district court's decision to deny that request is not an abuse of discretion." Id. (internal citation omitted).

**B. Discussion**

Pereira's motion for additional discovery is speculative. See Goris, 876 F.3d at 45. Pereira makes no request for tangible objects or specific data within the government's control. (Docket No. 2162 at pp. 12-15.) Instead, Pereira asserts, "*If* there was an investigation to corroborate the testimony of their witnesses regarding their allegations . . ., that investigation, and/or information must be provided." Id. at p. 12 (emphasis added). The Court has already ordered the government to produce all Brady material. (Docket No. 2153.) The Court has also agreed to consider appointing an investigator on Pereira's behalf, should Pereira provide the Court with the name of an investigator. (Docket No. 2171.) The government maintains that "it has previously provided complete discovery, including Brady materials," and the government agrees to provide any further material, should it become aware of new information. (Docket No. 2188 at p. 4.) As the Court articulated on January 26, 2018, "The Government deals with its case the way it wants to deal with its case. If there is no corroboration, that's to [Pereira's]

benefit." <u>See</u> Docket No. 2167.  Accordingly, the Court **DENIES**
Pereira's motion for additional discovery (Docket No. 2162.)

## VI.  Pereira's Motion to Disqualify the Prosecutor

On March 6, 2018, Pereira filed a motion "requesting
disqualification of A.U.S.A. Massucco-LaTaif." (Docket No. 2195
at p. 1.)  Pereira contends that the prosecutor "clearly violated
his duties when[] he introduced improper questions to Mr. Pereira"
at trial, as well as when he opposed granting bail to Pereira
because "it was easier for plea negotiations if Mr. Pereira
remained incarcerated." <u>Id.</u> at pp. 2 and 5.  Pereira also
maintains that "the prosecutor closed the options for plea
negotiations without adequate plea negotiations," and that the
"[l]ack of investigation and attempt to present their case without
adequate corroboration . . . brings to the attention the potential
of prosecutorial misconduct." <u>Id.</u> at pp. 5 and 7.

### A.  Legal Standard

The Court "may disqualify an attorney to prevent a
lawyer's presence from tainting a trial, for perceived conflict of
interest, to protect the integrity of the judicial process, to
enforce its rules against transgressors, or to maintain public
confidence in the legal profession." <u>United States v. Kouri-
Pérez</u>, 992 F. Supp. 511, 511 (D.P.R. 1997) (Fusté, J.) (citing <u>In
re Bushkin Assocs., Inc.</u>, 864 F.2d 241, 246 (1st Cir. 1989)).  The

Court should only disqualify an attorney, however, "in the rare instance where other sanctions may not achieve the necessary effect." Id. at 512. Disqualification should be "a measure of last resort." Id. (quoting In re Grand Jury Proceedings, 859 F.2d 1021, 1026 (1st Cir. 1988)).

**B.  Discussion**

The prosecutor's misconduct does not warrant disqualification. See Kouri-Pérez, 992 F. Supp. at 512. The First Circuit Court of Appeals has reprimanded the prosecutor, vacating Pereira's conviction because of the prosecutor's improper questioning. Pereira, 848 F.3d at 30, 33. This admonishment is sufficient to ensure that the prosecutor will not repeat his misconduct. Additionally, while the prosecutor's argument opposing Pereira's release for the "ease" of plea negotiations was inappropriate, disqualification, as a "measure of last resort," is unwarranted. See Kouri-Pérez, 992 F. Supp. at 512. As evidenced by the Court's decision to release Pereira, Docket No. 2122, the prosecutor's remarks did not "taint" the proceedings or prejudice Pereira. See Kouri-Pérez, 992 F. Supp. at 511. Finally, the record reflects adequate opportunity for plea negotiation, and the government is not required to corroborate the evidence it presents before the jury. See supra Section V(B). Accordingly, the Court

**DENIES** Pereira's motion to disqualify the prosecutor (Docket No. 2195).

## VII. San Lucas's Motion to Dismiss

### A.    Procedural History

On December 18, 2015, the Court issued an Order to Show Cause "as to why the Indictment pending against San Lucas [] should not be dismissed without prejudice" because "San Lucas [] remain[ed] fugitive more than three (3) years after the filing of the Indictment . . . and . . . the codefendants [had] already been sentenced." (Docket No. 2029.) On March 1, 2015, after no response from the government, the Court dismissed the pending indictment against San Lucas without prejudice, noting that "[t]he warrant[] of arrest . . . will remain outstanding." (Docket No. 2039.) San Lucas was arrested in New Jersey on September 7, 2016 and brought to Puerto Rico for an initial proceeding, which occurred on October 14, 2016. (Docket No. 2057.) On October 24, 2016, San Lucas was arraigned and detained. (Docket No. 2061.)

San Lucas's first status conference occurred on November 10, 2016, followed by a second pretrial conference on December 14, 2016. (Docket Nos. 2065 and 2070.) San Lucas submitted three motions for extensions of time to file a change of plea motion, on December 9, 2016, January 23, 2017, and February 6, 2017. (Docket Nos. 2068, 2077, 2085.) The third pretrial

conference occurred on March 9, 2017, during which "[d]efense counsel requested that the plea hearing be continued for March 29, 2017." (Docket No. 2097.)

On March 29, 2017, San Lucas's case was "called for change of plea . . . but not held." (Docket No. 2104.) Defense counsel notified the Court that San Lucas would "not change his plea," and the government requested that San Lucas and co-defendant Pereira be tried together. Id. In April 2017, San Lucas moved to appoint new counsel. (Docket Nos. 2108 and 2109.) The Court appointed new counsel for San Lucas pursuant to the Criminal Justice Act ("CJA") on April 17, 2017. (Docket No. 2111.)

The fifth pretrial conference occurred on April 28, 2017. (Docket No. 2117.) At the conference, San Lucas's defense counsel "indicated that he met with [San Lucas] and . . . . believes that the case may be resolved via a plea, but needs time to meet with [San Lucas], who is presently incarcerated in Fort Dix, [New Jersey]." Id. "The parties agreed that additional time is needed to further discuss the options available to resolve the case as to both [Pereira and San Lucas]." Id. At the sixth status conference on June 1, 2017, the Court was informed that San Lucas would be discussing the government's offer with his attorney. (Docket No. 2128.) Pereira's counsel "requested 45 days for another conference at which time negotiations [might] have been completed

and defense counsel [would] be in a better position to inform the Court how the case [might] be disposed." Id.

On June 14, 2017, San Lucas submitted a *pro se* motion to dismiss the indictment. (Docket No. 2131.) The Court ordered the motion to be stricken from the record because San Lucas "has counsel and will appear through counsel." (Docket No. 2132.) The seventh status conference occurred on July 14, 2017, during which San Lucas's attorney informed the Court that he would meet with San Lucas to discuss the merits of San Lucas's *pro se* motion. (Docket No. 2137.) San Lucas's counsel "also stated that an offer ha[d] been received and [that he would] engage in negotiations." Id. "Defense counsel requested additional time for the negotiations." Id. The eighth status conference occurred on August 18, 2017, when defense counsel for Pereira and San Lucas informed the Court that they would meet with their clients during the following week to discuss the offers and finalize plea agreements. (Docket No. 2142.) Pereira's counsel requested "30 days to conclude negotiations and file additional dispositive motions." Id.

Due to the aftermath of Hurricane María, Chief Judge Aida M. Delgado-Colón issued an Omnibus Order that, "[p]ursuant to 18 U.S.C. § 3161(h)(7)(A), all pending criminal cases are excluded from the requirements of the Speedy Trial Act until further order

of this Court." On October 6, 2017, the Court issued a similar

order, notifying Pereira and San Lucas that

> the district court is closed to the public and will be
> until October 16, 2017. That date is subject to
> revision. Because all inmates were transferred to the
> mainland, the trial scheduled for October 16, 2017 is
> vacated. A new trial date will be set by separate order.

(Docket No. 2156.)

On January 26, 2018, the Court held the ninth pretrial

conference, during which the government requested a trial date.

(Docket No. 2167.) Trial was scheduled for April 9, 2018. Id.[4]

San Lucas resubmitted his motion to dismiss the indictment on

January 29, 2018. (Docket No. 2169.) On January 31, 2018, the

Court ordered San Lucas to refile the motion to dismiss as a

separate document. (Docket No. 2172.)

**B.    San Lucas's Arguments**

On February 5, 2018, San Lucas refiled his motion to

dismiss the indictment for STA and Sixth Amendment violations.

(Docket No. 2173.) He argues that,

> based upon the government delays in locating and
> arresting defendant, and thereafter, [in] the arrest of
> said defendant, [and] in prosecuting this case[,] [t]he
> present prosecution is in violation of the defendant's
> right to a Speedy Trial.

---

[4] On February 19, 2018, Pereira's defense counsel moved to continue the trial,
Docket No. 2175, and the Court rescheduled the trial for May 14, 2018. (Docket
No. 2176.)

Id. at p. 3.  San Lucas contends that the government caused "delay between original, then superseding indictments, until arrest and thereafter from arraignment until trial" in order "to have Mr. Pereira's [] appeal [] be approved by Courts of Appeal . . . and therefore gain both trials to prejudice Defendant, when whereabouts always known to the government."  Id. at p. 7.  He maintains that his "whereabouts" during the four and a half years between the initial indictment and his arrest "are provable due to work records [], unemployment, unemployment federally sponsored training, bank records, federal postal update on forwarding mail, thus proving [San Lucas] was not in hiding."  Id. at p. 5.  He argues that his arrest at his residence is further proof that he was living in the open and not evading law enforcement during the years between his initial indictment and arrest.  Id.

San Lucas also claims that his interest in asserting his speedy trial right began on the day of his arrest.  Id. at p. 13. He emphasizes that he regularly asked defense counsel about potential speedy trial violations, and he attributes the delay in formally asserting this right to ineffective assistance of counsel and other complications.  Id. at pp. 13, 15-17, 19, 21-22.

### C.   Legal Standard

#### 1.   Speedy Trial Act Standard

The STA preserves a defendant's right to a speedy trial.  See Bloate v. United States, 559 U.S. 196, 203 (2010). The STA requires that a trial commence within seventy days of the filing of an indictment, or the first appearance of the defendant in court, whichever is later.  18 U.S.C. § 3161(c)(1).  Certain periods of delay are excluded from the seventy-day calculation. 18 U.S.C. § 3161(h)(1)-(9).  Exclusions include delays "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  18 U.S.C. § 3161(h)(1)(D); see also Bloate, 559 U.S. 196 at 205.  If trial does not commence by the end of seventy days plus the excluded periods, the "indictment shall be dismissed on motion of the defendant."  18 U.S.C. § 3162(a)(2).

#### 2.   Sixth Amendment Standard

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  "Although unusual, it is possible for a delay that does not violate the STA to run afoul of the Sixth Amendment's guarantee of a speedy trial." United States v. Casas, 425 F.3d 23, 33 (1st Cir. 2015) (internal citations omitted).  In determining whether a defendant's Sixth

Amendment right to a speedy trial has been violated, the Court considers four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right; and (4) prejudice to the defendant. <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972). No factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." <u>Id.</u> at 533.

The length of pretrial delay is calculated from the date of arrest or indictment, whichever occurs first. <u>United States v. Muñoz-Amado</u>, 182 F.3d 57, 61 (1st Cir. 1999). This factor "is actually a double enquiry." <u>Doggett v. United States</u>, 505 U.S. 647, 651 (1992). To trigger the Sixth Amendment analysis, a defendant must allege that the interval between accusation and trial "has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." <u>Id.</u> at 651-52 (internal citation omitted). Next, the Court considers "as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. This latter enquiry is significant to the speedy trial analysis because . . . the presumption that pretrial delay has prejudiced the accused intensifies over time." <u>Id.</u> at 652.

When considering undue prejudice to the defendant caused by pretrial delay, the Court focuses on three speedy trial interests:    (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired.  See Barker, 407 U.S. at 532.    The Court also considers which delays attributable to the prosecution have specifically harmed these interests and the extent to such harm.  See, e.g., Rashad v. Walsh, 300 F.3d 27, 40 (1st Cir. 2002).  "The most serious consideration is protection against impairment of the defense."  United States v. Rivera-Fuentes, 979 F. Supp. 2d 233, 238 (D.P.R. 2014) (citing Barker, 407 U.S. at 532).

**D.  Discussion**

   **1.  Speedy Trial Act**

San Lucas's statutory argument is unavailing because the seventy days of the STA have not expired.  See Bloate, 559 U.S. at 205.  The STA clock began to run on October 14, 2016 at San Lucas's initial court appearance.  See Docket No. 2057; 18 U.S.C. § 3161(c)(1).  Nine (9) days accrued between the initial proceeding and the arraignment, which occurred on October 24, 2016. See Docket No. 2061.  Sixteen (16) days accrued between the arraignment and the first pretrial conference on November 10, 2016, see Docket No. 2065, and another twenty-eight (28) days accrued

between the first pretrial conference and San Lucas's motion for an extension of time on December 9, 2016.  See Docket No. 2068.

The STA clock has been tolled since December 9, 2016 because of San Lucas's and Pereira's various motions and requests for extensions of time, as well as the passing of Hurricane María.  See Docket Nos. 2068, 2070, 2077, 2085, 2087, 2091, 2097, 2104, 2108, 2109, 2114, 2117, 2128, 2131, 2137, 2142, 2156, 2167, 2169, 2173, 2177, 2191, 2194; 18 U.S.C. § 3161(h)(7)(a); 18 U.S.C. § 3161(h)(1)(D); Omnibus Order, Misc. No. 17-509 (ADC), at 2 (D.P.R. Oct. 4, 2017); see also Casas, 425 F.3d at 31 ("Our precedent makes clear that any defendant's motion resulting in excludable time toll[s] the STA clock for his codefendants."  (internal quotation marks and citation omitted)). Because less than 70 days have accrued on the STA clock, the government is within its allotted time to commence trial. Accordingly, the Court **DENIES** San Lucas's motion to dismiss pursuant to the STA (Docket No. 2173.)

### 2.   Sixth Amendment

San Lucas raises valid constitutional questions pertaining to his Sixth Amendment rights.  (Docket No. 2173.)  For Sixth Amendment purposes, San Lucas is entitled to a computation of time from May 24, 2012, the date of his initial indictment. See Muñoz-Amado, 182 F.3d at 61; United States v. Irizarry-Colón,

848 F.3d 61, 70 (1st Cir. 2017) (holding that the entire period of time from the original indictment counts for constitutional speedy trial inquiries); <u>see also</u> Docket No. 3. San Lucas's case has been pending for a total of six years. This delay, including four and a half years between San Lucas's initial indictment and arrest, is presumptively prejudicial. <u>See</u> <u>Doggett</u>, 505 U.S. at 652; <u>see also</u> <u>United States v. Irizarry-Colón</u>, 268 F. Supp. 3d 324, 329 (D.P.R. 2017) (Besosa, J.).

After assessing the length of the delay, the Court must determine the extent to which the delay was attributable to the government or to San Lucas. <u>See</u> <u>Doggett</u>, 505 U.S. at 652. There is no evidence on the record indicating the reason for this delay, other than San Lucas's assertions in his motion to dismiss. (Docket No. 2173 at pp. 11-12.) Accordingly, the Court **ORDERS** the parties to appear before the Court on **May 14, 2018** to address the reason for the delay and the delay's implications pursuant to the Sixth Amendment.

## VIII. Conclusion

For the reasons stated above, Pereira and San Lucas's joint motion for change of venue and severance (Docket No. 2191); Pereira's motion for change of venue (Docket No. 2193); Pereira's motion to exclude the paper with Pereira's telephone number written on it (Docket No. 2140); Pereira's motion for additional discovery

(Docket No. 2162); Pereira's motion to dismiss (Docket No. 2166); and Pereira's motion to disqualify the prosecutor (Docket No. 2195) are **DENIED**; and San Lucas's motion to dismiss (Docket No. 2173) is **DENIED IN PART**. The Court **ORDERS** the parties to appear before the Court on **May 14, 2018 at 9:00 a.m.** to address San Lucas's constitutional speedy trial claim, specifically as to the reason for the six-year delay in prosecuting his case.

The jury trial scheduled to commence on May 14, 2018 is **VACATED**.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, May 4, 2018.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE