# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    **Plaintiff**,<br><br>             **v.**<br><br>NELSON PEREIRA [3],<br><br>    **Defendant**. | **Criminal No.** 12-413 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is defendant Nelson Pereira ("Pereira")'s second motion for change of venue pursuant to Federal Rule of Criminal Procedure 21 ("Rule 21"), the Fifth Amendment Due Process Clause of the United States Constitution, and the Sixth Amendment of the United States Constitution. (Docket No. 2305.) For the reasons set forth below, the Court **DENIES** Pereira's second motion for change of venue. (Docket No. 2305.)

**I. Background**

On May 24, 2012, a federal grand jury returned an indictment charging Pereira with violating 21 U.S.C. section 841 ("section 841") and 21 U.S.C. section 846 ("section 846"). (Docket No. 3 at

pp. 3-4.)[1] The indictment also charges Pereira with violating 18 U.S.C. section 2 ("section 2"). Id. On March 15, 2013, a federal grand jury returned a superseding indictment charging, among others, Pereira with conspiring to possess cocaine with intent to distribute in violation of sections 841 and 846. (Docket No. 518 at pp. 3-4.)[2] The superseding indictment also charges Pereira with aiding and abetting the possession of cocaine with the intent to distribute in violation of section 841 and section 2. Id. at pp. 6-7.

Following unsuccessful plea negotiations, Pereira's trial commenced in March 2014. (Docket No. 1278.) The jury found Pereira guilty of "[c]onspiracy to possess with the intent to distribute five [] kilograms or more of cocaine" and "[a]iding and abetting in possession with intent to distribute five [] kilograms of cocaine," in violation of sections 2, 841, and 846. (Docket No. 1445.) Pereira appealed the verdict to the First Circuit Court of Appeals. (Docket No. 1876.) The court of appeals held that the prosecutor's improper questions might have affected the

---

[1] In addition to Pereira, the grand jury indicted nineteen (19) individuals. (Docket No. 3.) All defendants pled guilty or were convicted at trial, except for two defendants. (Docket Nos. 388, 403, 406, 421, 424, 427, 436, 551, 554, 1296, 1325, 1446-49, 1828, 1841, 2039, 2227.) Pereira was convicted, but the court of appeals vacated his conviction. U.S. v. Pereira, 848 F.3d 17 (1st Cir. 2017); Docket Nos. 2083, 2084, 2089.

[2] The superseding indictment added two defendants to the initial indictment. (Docket No. 518.) Both defendants pled guilty. (Docket Nos. 1485 and 1828.)

outcome of the trial. United States v. Pereira, 848 F.3d 17, 33 (1st Cir. 2017). Accordingly, the First Circuit Court of Appeals vacated Pereira's conviction on February 3, 2017 and remanded for a new trial. Id. The new trial is scheduled to commence on July 22, 2019. (Docket No. 2329.)

**A.   Pereira's First Motions for Change of Venue**

On March 5, 2018, Pereira joined a co-defendant's motion for change of venue and severance, see Docket Nos. 2191 and 2197, and filed an independent motion for change of venue. (Docket No. 2193.) In the joint motion, Pereira argued that he "has resided nearly all his life in the state of New Jersey" and "has had nearly no contact with our [Puerto Rico] jurisdiction before the instant charges were filed." (Docket No. 2191 at pp. 1-2.) He maintained that "the alleged relevant events connected to the charged offense took place outside this jurisdiction" and that "[i]f the instant criminal case is permitted to remain in our jurisdiction, [Pereira] will be denied the opportunity to both investigate the instant charges as well as . . . interview potential witnesses who . . . reside outside our jurisdiction." Id. at p. 2. According to Pereira, he "will be placed in an unfair position as it will be unduly onerous, costly and burdensome for [his] potential witnesses to travel and stay in Puerto Rico during the pendency of the instant jury trial," and "[t]his factor would

make [his] witnesses unavailable, causing extreme irreparable prejudice to the defense." Id.

In Pereira's additional motion for change of venue, he argued that he "would be deprived of his constitutional rights, including due process, Fifth amendment rights, Sixth amendment rights, and other constitutional rights if he has to defend here in Puerto Rico." (Docket No. 2193 at p. 2.) Pereira asserted that "[a]ll principal allegations and evidence relevant to [] Pereira" and "[a]ll potential witnesses, and evidence for the defense of [] Pereira are located in New Jersey." Id. at p. 2. He claimed that he would not be "able to obtain the opportunity for adequate preparation for trial" and therefore would be "deprived of due process and fairness of trial." Id. at p. 4.

On May 4, 2018, the Court denied Pereira's motions for change of venue, rejecting Pereira's arguments pursuant to Rule 21 and the United States Constitution. United States v. Pereira, 312 F. Supp. 3d 262, 268-70 (D.P.R. 2018) (Besosa, J.).

**B.   Pereira's Second Motion for Change of Venue**

On April 3, 2019, Pereira filed a second motion for change of venue. (Docket No. 2305.) Pereira asserts the same arguments as he contended in his earlier motions, arguing that he "would be deprived of his constitutional rights, including due process, Fifth amendment rights, Sixth amendment rights, and other

constitutional rights if he has to defend here in Puerto Rico from the allegations contained in the superseding indictment." Id. at p. 2. Pursuant to the Court order on April 4, 2019, Pereira accompanies his second motion with supplemental information regarding his potential trial witnesses and their respective obstacles to travel to Puerto Rico. (Docket Nos. 2309 and 2314.)

## II. Legal Standard

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to trial by an impartial jury. Skilling v. United States, 561 U.S. 358, 377 (2010). This right "has also been characterized as 'a basic requirement of due process.'" In re Tsarnaev, 780 F.3d 14, 18 (1st Cir. 2015) (quoting Skilling, 561 U.S. at 378). While "[b]y constitutional design, [] trial occurs 'in the State where the . . . crimes . . . have been committed,'" a defendant may move to transfer the proceeding if "extraordinary local prejudice will prevent a fair trial." Skilling, 561 U.S. at 377-78 (quoting U.S. Const. art. III, § 2, cl. 3). When a defendant moves to transfer venue, "the court must transfer the proceeding against the defendant to another district court if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a). "In those rare, extreme

circumstances it may be a 'denial of due process of law to refuse the request for a change of venue.'" Tsarnaev, 780 F.3d at 18 (quoting Rideau v. Louisiana, 373 U.S. 723, 726 (1963)).

Transfer of venue pursuant to Rule 21(a) is required "where there is an ever-prevalent risk that the level of prejudice permeating the trial setting is so dense that a defendant cannot possibly receive an impartial trial." United States v. Quiles-Olivo, 684 F.3d 177, 182 (1st Cir. 2012). This prejudice may be established "where the facts show that jury prejudice should be presumed, and if prejudice should not be presumed, that the jury was actually prejudiced against the defendant." Id. (internal quotation marks and alteration omitted). Rule 21(a)'s requirements "almost exclusively" apply to cases "in which pervasive pretrial publicity has inflamed passions in the host community past the breaking point." United States v. Walker, 665 F.3d 212, 223 (1st Cir. 2011).

"A court also may transfer a criminal case to another district 'for the convenience of the parties, any victim, and the witnesses, and in the interest of justice.'" Walker, 665 F.3d at 223 (quoting Fed. R. Crim. P. 21(b)). "Generally, venue change under Rule 21(b) may be warranted depending on a number of factors, the significance of which inevitability will vary depending on the facts of a given case." Quiles-Olivo, 684 F.3d at 184 (citing Platt v. Min. Mining

& Mfg. Co., 376 U.S. 240, 243-44 (1964).  Those factors include the location of the parties, potential witnesses, contested events, relevant documents, and counsel, expense to the parties, overall accessibility of the trial location, and any other special factor.  Id. at 185 (citing Platt, 376 U.S. at 243-44).  The Court may transfer a case if a defendant demonstrates that the change is *both* convenient *and* in the interest of justice, "[g]iven that Rule 21(b) lists 'convenience' and 'interest of justice' conjunctively."  Id. (citing Fed. R. Crim. P. 21(b); Walker, 665 F.3d at 224.

### III. Discussion

Pereira's Rule 21(a) and constitutional claims are unpersuasive for the same reasons that the Court rejected his earlier arguments.  See Pereira, 312 F. Supp. 3d at 268-70; Docket Nos. 2193 and 2305.  Like Pereira's first motions, his second motion fails to identify any "pervasive pretrial publicity" or "risk that the level of prejudice permeating the trial setting is so dense" that Pereira "[could not] possibly have an impartial trial."  See Walker, 665 F.3d at 223; Quiles-Olivo, 684 F.3d at 182.  Because Pereira provides no evidence suggesting actual or presumed jury prejudice, his second motion fails to establish the Rule 21(a) requirements.  See Quiles-Olivo, 684 F.3d at 182.  Pereira's constitutional claims are similarly unconvincing.  See

Docket No. 2305.  Pereira neglects to indicate any existence of "extraordinary local prejudice" that would "prevent a fair trial." See Skilling, 561 U.S. at 377-78 (quoting U.S. Const. art. III, § 2, cl. 3).  Pereira's case does not amount to the "rare, extreme circumstance" of local prejudice "so great" as to impede his right to an impartial trial in this jurisdiction.  See Tsarnaev, 780 F.3d at 18; Fed. R. Crim. P. 21(a).

The Rule 21(b) factors also do not weigh in Pereira's favor. See Quiles-Olivo, 684 F.3d at 185.  Although Pereira resides in New Jersey, the other co-defendants and many witnesses reside in Puerto Rico, and the majority of the events related to the conspiracy occurred in Puerto Rico.  (Docket No. 2201 at p. 2.) The conspiracy involved preparing suitcases loaded with cocaine in Puerto Rico and shipping the suitcases in commercial aircraft from Puerto Rico to the Continental United States.  (Docket No. 518 at pp. 4-6.)  Indeed, during Pereira's first trial, co-conspirator Javier Olmo-Rivera ("Olmo") testified that Pereira "came to Puerto Rico. . . . where Mogoyo was waiting for him."  (Docket No. 1409 at p. 39.)  Olmo testified that Pereira traveled to Puerto Rico "[i]n order to meet with Mogoyo," id., otherwise known as Wilfredo Rodríguez-Rosado ("Rodríguez"), the maximum leader of the conspiracy.  (Docket No. 3 at p. 3.)  Olmo "saw [Pereira]" "[n]ext to [Olmo's] business where Mogoyo had the roofing business."

(Docket No. 1409 at p. 39.)  According to Olmo, Pereira arrived with "a yellow envelope" of "American Airlines tags" for the luggage containing cocaine to be loaded onto American Airlines commercial flights and sent to, in Pereira's case, the Newark, New Jersey airport.  (Docket No. 1409 at pp. 39-40.)  Pereira's purported participation in the conspiracy thus involved regular dealings with Puerto Rico, including visits to the island and meetings with Rodríguez.

While many incidents involving Pereira also occurred in or around New Jersey, the government witnesses are mostly Puerto Rico residents, working as law enforcement agents or employees of American Airlines in Puerto Rico.  (Docket No. 2201 at p. 2.)  The government asserts that "the majority of witnesses who will testify concerning these events are directly tied to Puerto Rico, and they will testify about events that occurred in Puerto Rico as well as New Jersey and elsewhere."  Id.  The government's physical evidence is located in Puerto Rico, and all legal counsel live in Puerto Rico.  Id.  This Court is centrally located to all attorneys and investigative agencies.  Id.  Finally, unlike Pereira, the government carries the burden of proof and must present evidence to prevail.  The government "called more than 20 witnesses [in Pereira's original trial], and the majority of these witnesses came from Puerto Rico."  Id.  The expenses associated with trial

would be substantially higher to the government if this case were tried outside of Puerto Rico.  Although Pereira's supplemental submissions identify possible defense witnesses who may not be able to travel to Puerto Rico for the new trial, see Docket Nos. 2309 and 2314, the potential absence of those witnesses does not offset the other Rule 21(b) factors that weigh against Pereira's request.  See United States v. Polizzi, 500 F.2d 856, 900-01 (9th Cir. 1974) (holding that the defendant's residence and location of defense witnesses are factors to be considered but are not controlling in the Rule 21(b) analysis).

Similar to Pereira's first motions, Pereira's second motion fails to establish Rule 21(a) and constitutional prejudice, and the Court does not find that a change of venue would be both convenient and "in the interest of justice" pursuant to Rule 21(b). See Quiles-Olivo, 684 F.3d at 185.  Accordingly, the Court **DENIES** Pereira's second motion for change of venue.  (Docket No. 2305.)

## IV. Conclusion

For the reasons stated above, Pereira's second motion for change of venue (Docket No. 2305) is **DENIED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 12, 2019.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE